## E. V. D. Morris et al. v. Mary Despain.

1. INSTRUCTIONS—*Malpractice.*—An instruction which tells the jury that even though they should believe from the evidence that plaintiff's limb might have been straightened by being broken again and reset, yet if the evidence showed that by reason of the want of ordinary care and skill on the part of defendants the limb was permitted or caused to be crooked, and that ordinary skill and care on their part would have avoided the injury, the refusal of plaintiff to have her limb rebroken and reset was no defense to any injury caused by defendant's want of ordinary skill or care, is proper.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Knox County; the Hon. GEORGE W. THOMPSON, Judge presiding. Heard in this court at the April term, 1902. Affirmed. Opinion filed July 18, 1902. Rehearing denied October 10, 1902.

COOKE & STEVENS and R. D. ROBINSON, attorneys for appellants.

M. J. DAUGHERTY and C. D. HENDRIX, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On November 14, 1900, appellee, a woman then sixty-nine years of age, in good health, fell and suffered an oblique fracture of the left thigh bone, two or three inches below the hip joint. She sent for Dr. Morris, then physician in charge of the Galesburg sanitarium, to attend her. Dr. Morris sent his assistant, Dr. Franing, a young physician, the other appellant here, to her, and soon followed in person. Appellants reduced the fracture and put on the broken limb what is known as a roller splint, made by taking a bed comforter, folding it in the middle and rolling it inward from both ends. They continued to attend appellee and treat her, Dr. Franing being largely left in charge of the patient, for about four months, when they discharged her. At that time they left their patient with her injured limb inverted or turned in toward the other. She sued the physicians for malpractice, and on the first trial obtained a verdict for $1,000, which was set aside.

On the second trial she had a verdict for $950, and for that amount judgment was rendered. Defendants below appealed.

Appellee claims that the condition of her leg was brought about by careless and unskillful treatment on the part of appellants; that by proper and careful professional skill they could have rendered the limb as capable of use as before the same was broken; that they did nothing to prevent the inversion until eight weeks after the fracture had occurred and the bone had grown together, when they placed the leg in a fracture box; that this treatment caused her great pain and was of no benefit in correcting the inversion. Appellants claim that they exercised care and professional skill in the treatment of appellee and that what they did was good practice; that prior to the use of the fracture box they desired to use a system of weights to avoid the injury complained of, but that appellee would not permit them to do so, and that she also disobeyed their instructions.

According to appellee's proof the leg is inverted ninety degrees, the front of the knee of the injured limb resting against the side of the other knee and the toes of the former resting against the ankle of the uninjured leg, so that she is utterly unable to walk.

According to appellants' proof the leg is only inverted twenty-five or thirty degrees. Upon the questions whether appellee obeyed the instructions of the physicians or disobeyed them, and whether the treatment they pursued was the proper treatment to prevent inversion or not, the evidence is in hopeless conflict. Two juries have believed appellee and her witnesses and found in her favor. There is abundant evidence in this record to sustain appellee's case and it would be impossible for us to say that the jury ought to have found against her.

After the union between the bones was complete and appellee had discovered the condition of her leg, she requested that another physician be called in. This physician being called, advised that the only way by which the

limb could then be straightened, would be by breaking the bone and resetting it, but this, appellee declined to allow to be done.

The court gave an instruction for appellee which told the jury that even though they should believe, from the evidence, that appellee's limb might have been straightened by being broken again and reset, yet if the evidence showed that by reason of the want of ordinary care and skill on the part of appellants, the limb was permitted or caused to be crooked, and that ordinary skill and care on their part would have avoided the injury, the refusal of appellee to have her limb rebroken and reset was no defense to any injury caused by appellants' want of ordinary skill or care. Appellants claim that the giving of this instruction was error. We are of opinion, however, that appellee was not required to submit to have her limb rebroken in order to relieve appellants from liability for lack of ordinary care and skill. Moreover, there was evidence tending to show that such an operation would be attended with great pain and that at her age and in her physical condition, there was great danger that it would prove fatal to her. The law did not require appellee to risk such danger before she could sustain her suit. The instruction was therefore properly given.

Certain instructions given for appellants apparently stated a contrary rule in some respects to that laid down in the instruction just referred to, but so far as the instructions conflicted upon the subject mentioned, those given for appellants were wrong.

Appellants' refused instructions were in the main incorrect. So far as they were correct we find them fully covered by other instructions given for appellants. The record in this case shows no reason for a reversal of the judgment of the court below and the same is accordingly affirmed.